**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | |
|---|---|
| **LYNCHBURG REPUBLICAN CITY COMMITTEE and VERONICA BRATTON,** | |
| **Plaintiffs,** | **Civil No. 6:25-cv-00029-NKM** |
| **v.** | |
| **VIRGINIA DEPARTMENT OF ELECTIONS, STATE BOARD OF ELECTIONS, and SUSAN BEALS, in her official capacity,** | |
| **Defendants.** | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS THE COMPLAINT UNDER
FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

Jason S. Miyares
   *Attorney General*

Thomas J. Sanford (VSB #95965)
   *Deputy Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 692-0551 – Telephone
(804) 371-0200 – Facsimile
TSanford@oag.state.va.us

Erika L. Maley (VSB #97533)
   *Solicitor General*

Kevin M. Gallagher (VSB #87548)
   *Principal Deputy Solicitor General*

Michael Dingman (VSB #95762)
   *Deputy Solicitor General*

*Counsel for Defendants Virginia Department of Elections, State Board of Elections, and Susan Beals, in her official capacity*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................... 2

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT ..................................................................................................................... 6

I.   The Committee fails to establish subject-matter jurisdiction ................................... 6

   A.  The Committee lacks standing.......................................................................... 6

   B.  The Committee's claims are not ripe for review.............................................11

   C.  Sovereign immunity bars most of the claims.................................................. 13

II. The Committee fails to state claims upon which relief can be granted.................... 17

CONCLUSION................................................................................................................. 24

CERTIFICATE OF SERVICE ........................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24th Senatorial Dist. Republican Comm. v. Alcorn*,
    820 F.3d 624 (4th Cir. 2016) ....................................................................1, 6, 10, 11

*Alden v. Maine*,
    527 U.S. 706 (1999) ...........................................................................................13

*In re Am. Honda Motor Co., Inc., Dealerships Rels. Litig.*,
    315 F.3d 417 (4th Cir. 2003) ...............................................................................14

*American Chiropractic v. Trigon Healthcare*,
    367 F.3d 212 (4th Cir. 2004) ..................................................................8, 10, 20

*American Party of Tex. v. White*,
    415 U.S. 767 (1974) ...........................................................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................6

*Babbitt v. United Farm Workers National Union*,
    442 U.S. 289 (1979) ...........................................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................6, 20

*Bland v. Roberts*,
    730 F.3d 368 (4th Cir. 2013) ...............................................................................16

*Booth v. State of Md.*,
    112 F.3d 139 (4th Cir. 1997) ...............................................................................14

*Bragg v. West Va. Coal Ass'n*,
    248 F.3d 275 (4th Cir. 2001) .........................................................................16, 17

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ...................................................................................2, 17, 18

*California Democratic Party v. Jones*,
    530 U.S. 567 (2000) ...........................................................................................21

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .........................................................................................7, 8

ii

*Clingman v. Beaver*,
    544 U.S. 581 (2005) ................................................................................ 2, 21, 22

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999) ........................................................................................... 15

*Democratic Party of U.S. v. Wisconsin ex rel. La Follette*,
    450 U.S. 107 (1981) ........................................................................................... 23

*Disability Rts. S.C. v. McMaster*,
    24 F.4th 893 (4th Cir. 2022) ............................................................................... 7

*Doe v. Virginia Dep't of State Police*,
    713 F.3d 745 (4th Cir. 2013) ............................................................................ 12

*Edelman v. Jordan*,
    415 U.S. 651 (1974) ........................................................................................... 15

*Edley-Worford v. Virginia Conf. of United Methodist Church*,
    430 F. Supp. 3d 132 (E.D. Va. 2019) ............................................................. 9, 10

*Elliot v. Commonwealth*,
    267 Va. 464 (2004) ............................................................................................ 17

*Eu v. San Francisco Cnty. Democratic Cent. Comm.*,
    489 U.S. 214 (1989) ........................................................................................... 22

*Faircloth v. Finesod*,
    938 F.2d 513 (4th Cir. 1991) ............................................................................ 17

*Fitzgerald v. Alcorn*,
    285 F. Supp. 3d 922 (W.D. Va. 2018) ................................................................ 9

*Fusaro v. Cogan*,
    930 F.3d 241 (4th Cir. 2019) ....................................................................... 18, 22

*Fusaro v. Howard*,
    19 F.4th 357 (4th Cir. 2021) ............................................................................. 23

*Goldman v. Northam*,
    566 F. Supp. 3d 490 (E.D. Va. 2021) ........................................................... 13, 15

*Greater Baltimore Ctr. For Pregnancy Concerns, Inc. v. Mayor & City Council of
    Baltimore*,
    721 F.3d 264 (4th Cir. 2013) ............................................................................ 23

iii

*Hutto v. South Carolina Ret. Sys.*,
    773 F.3d 536 (4th Cir. 2014) ............................................................... 13

*John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*,
    78 F.4th 622 (4th Cir. 2023) .................................................................. 7

*Jordan v. Defense Fin. and Acct. Servs.*,
    744 Fed. Appx. 692 (11th Cir. 2018) ............................................. 14, 17

*KVUE, Inc. v. Moore*,
    709 F.2d 922 (5th Cir. 1983) ............................................................... 20

*Libertarian Party of Va. v. Virginia State Bd. of Elecs.*,
    2010 WL 3732012 (E.D. Va. Sept. 16, 2020) .......................... 13, 14, 16

*Lightfoot v. Eu*,
    964 F.2d 865 (9th Cir. 1992) ......................................................... 23, 24

*Lovern v. Edwards*,
    190 F.3d 648 (4th Cir. 1999) ................................................................. 6

*Lowe v. Brink*,
    615 F. Supp. 3d 417 (E.D. Va. 2022) ................................................. 13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................... 7, 9

*Marshall v. Meadows*,
    105 F.3d 904 (4th Cir. 1997) ..................................................... 2, 10, 11

*Maryland Elec. Integrity, LLC v. Maryland State Bd. of Elecs.*,
    127 F.4th 534 (4th Cir. 2025) ............................................................... 7

*Miller v. Brown*,
    462 F.3d 312 (4th Cir. 2006) ......................................................... 11, 13

*Miller v. Brown*,
    503 F.3d 360 (4th Cir. 2007) ....................................................... *passim*

*Norman v. Reed*,
    502 U.S. 279 (1992) ............................................................................ 22

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .............................................................................. 8

*Papasan v. Allain*,
    478 U.S. 265 (1986) .............................................................................. 6

iv

*Parkridge 6 LLC v. United States Dep't of Transp.*,
  2010 WL 1404421 (E.D. Va. Apr. 6, 2010) ........................................................15

*Passaro v. Virginia*,
  935 F.3d 243 (4th Cir. 2019) ........................................................................14

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984).............................................................................15, 16

*Port Authority Trans-Hudson Corp. v. Feeney*,
  495 U.S. 299 (1990)..................................................................................15

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993).................................................................................16

*Quern v. Jordan*,
  440 U.S. 332 (1979).................................................................................14

*Reading v. United States*,
  506 F. Supp. 2d 13 (D.D.C. 2007) ..............................................................14, 17

*Regents of the Univ. of Cal. v. Doe*,
  519 U.S. 425 (1997).................................................................................13

*Reynolds v. Sims*,
  377 U.S. 533 (1964)...............................................................................18, 23

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991) ........................................................................9

*In re Sec'y of the Dep't of Crime Control & Pub. Safety*,
  7 F.3d 1140 (4th Cir. 1993) ........................................................................14

*South Carolina v. United States*,
  912 F.3d 720 (4th Cir. 2019) ..............................................................11, 12, 13

*Storer v. Brown*,
  415 U.S. 724 (1974).................................................................................18

*Texas v. KVUE-TV, Inc.*,
  465 U.S. 1092 (1984)................................................................................20

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997)........................................................................2, 21, 22, 23

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)...................................................................................7

*United States v. Lawson*,
    677 F.3d 629 (4th Cir. 2012) ................................................................20

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)........................................................................24

*United States v. Poole*,
    531 F.3d 263 (4th Cir. 2008) ................................................................6

*United States v. Stevens*,
    559 U.S. 460 (2010).......................................................................23

*Veney v. Wyche*,
    293 F.3d 726 (4th Cir. 2002) ................................................................6

*Virginia Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247 (2011).......................................................................16

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989).........................................................................16

*Ex parte Young*,
    209 U.S. 123 (1908).......................................................................16

**Statutes**

28 U.S.C. § 1651 ................................................................................14

Va. Code § 2.2-505 .............................................................................20

Va. Code § 24.2-102 ...........................................................................14

Va. Code § 24.2-103 ...........................................................................14

Va. Code § 24.2-509 ...................................................................*passim*

Va. Code § 24.2-510 .............................................................................2

Va. Code § 24.2-516 ...........................................................................12

Va. Code § 24.2-530 .............................................................................2

**Other Authorities**

2024 Op. Atty. Gen. Va. No. 24-003, 2024 VA. AG LEXIS 2, (Feb. 16, 2024) .................3, 4, 20

Fed. R. Civ. P. 12 ...............................................................................6

vi

U.S. Const. art. III, § 2 ...................................................................................................................7

## INTRODUCTION

The Complaint should be dismissed because the challenged Virginia election statute does not violate the First Amendment and has not injured the Plaintiffs. Plaintiffs, the Lynchburg Republican City Committee and its Chair (collectively, the "Committee"), fundamentally misunderstand the statute. The Committee asserts that Virginia Code § 24.2-509(A) is a "Convention Ban" that requires it to hold "open" primaries. Compl. ¶¶ 38–44. But the statute only requires political parties to allow absentee participation in nominations by certain voters, such as active-duty military and the disabled, who are unable to attend in person. The statute provides that the party "shall have the right to determine the method by which a party nomination" is made, and may limit participation to "voters who are otherwise eligible . . . under that political party's rules." Va. Code § 24.2-509(A). Thus, the Committee is free to choose any nominating method that it prefers—convention, party canvass, or otherwise—and may limit participation to only party members. The statute thus expands voters' opportunities to participate in nominations while leaving parties wide latitude to design their own processes.

The Committee's First Amendment claims therefore fail for two reasons. First, the claims are not justiciable. The challenged statute does not bar the Committee from holding a convention, and therefore does not injure it. To the extent the Committee has alleged any injury at all, its real quarrel appears to be with the statewide Republican Party; it asserts that the Party has instructed it to use only "a state-run primary." Compl. ¶ 51. But a voluntary choice made by the state Party is not an injury traceable to the statute. *24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 632 (4th Cir. 2016). The Commonwealth's sovereign immunity also independently bars most of the claims.

Second, even if the Court reaches the merits, the Complaint nevertheless fails to state a claim. "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots," *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997), to ensure that elections are "fair and honest," *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quotation marks omitted). Thus, "reasonable, nondiscriminatory restrictions" on a nomination process are typically constitutional. *Clingman v. Beaver*, 544 U.S. 581, 593 (2005) (quoting *Timmons*, 520 U.S. at 358)). Code § 24.2-509(A) imposes just such reasonable, nondiscriminatory regulations. It applies alike to all political parties to protect voters who are unable to attend nominations in person. It thus serves a compelling government interest without imposing a severe burden on the Committee's First Amendment rights. Therefore, the statute easily passes the *Anderson-Burdick* balancing test applicable here; indeed, it would even satisfy strict scrutiny.

## FACTUAL BACKGROUND

Virginia law permits the local branches of a political party to select their own methods of nominating candidates for local office. Va. Code § 24.2-509(A) ("The duly constituted authorities of the political party for the district, county, city, or town . . . shall have the right to determine the method by which a party nomination for [a local office] shall be made."). If a party chooses a state-run primary, then all eligible voters, regardless of party affiliation, may vote in that primary. *Id.* § 24.2-530 ("All persons qualified to vote . . . may vote at [a] primary."); see also Compl. ¶ 25; *Marshall v. Meadows*, 105 F.3d 904, 905 (4th Cir. 1997) (describing Virginia's primary system). But a political party need not use a state-run primary. See, *e.g.*, Va. Code § 24.2-510 (describing deadlines for "nominations by political parties by methods other than a primary"). For example, a party may select "a party convention . . . a mass meeting . . . a party canvass or [an] unassembled caucus" to nominate its candidates. *Miller v. Brown*, 503 F.3d 360, 362 (4th Cir. 2007) (hereinafter

2

*Miller II*). Thus, *if* a party selects a state-run primary as its nominating method, *then* the state-run primary must be open to all registered voters. But "by merely choosing any of the[ ] other options, a party is free to limit its candidate selection process to voters who share its political views." *Id.* at 367. The Fourth Circuit has held that "Virginia's open primary statute" therefore "does not facially burden political parties' associational rights." *Ibid.*

In 2021, the Virginia General Assembly amended the statute to require parties to provide for some absentee participation in their nomination processes. See H.B. 2020 (2021) (now codified at Va. Code § 24.2-509(A)). The statute now prohibits a political party from selecting a nominating method that "will have the practical effect of excluding [the] participation" of five categories of qualified voters: 1) active duty military; 2) voters "temporarily residing outside of the United States"; 3) students "attending a school or institution of higher education"; 4) persons with disabilities; and 5) persons with a "communicable disease of public health threat" or who "may have come in contact with a person with such disease." *Ibid.* Importantly, the statute provides that these voters must be given an opportunity to participate only if they "are otherwise eligible to participate in the nominating process under that political party's rules but are unable to attend meetings." *Ibid.* Thus, the statute does not require a party to open its nomination process to voters who are not members of the party. Rather, the party's own rules continue to define who is an eligible participant, and the statute simply requires the party to allow these voters to participate on an absentee basis. *Ibid.*

Following the amendment, the Attorney General of Virginia issued an advisory opinion addressing "whether Code § 24.2-509(A) operates to prohibit a political party from selecting methods other than a state-run primary as a means of nominating a candidate for office." Ex. B to Declaration of Thomas J. Sanford, 2024 Op. Atty. Gen. Va. No. 24-003, 2024 VA. AG LEXIS 2,

(Feb. 16, 2024) (hereinafter AG Op.); see also Compl. ¶¶ 49–50. The Attorney General explained that the statute does "not contain a *per se* prohibition against any particular method of nominating candidates." AG Op., Ex. B at 4. Rather, "under § 24.2-509(A), a political party may not select a nomination method that *de facto* requires covered voters to be physically present to participate or that otherwise has the practical effect of excluding their participation." *Id.* at 1. Thus, "whether § 24.2-509(A) prohibits a particular nominating method depends on whether the process chosen, in practice rather than in theory, excludes participation by the covered voters." *Id.* at 4.

The Republican Party of Virginia's "Party Plan" is a private agreement governing the "free association" of members of the Republican Party acting "within the Commonwealth of Virginia." Ex. A to Declaration of Thomas J. Sanford, at 1 (hereinafter Party Plan). The Party Plan provides that "Mass Meetings, Party Canvasses, Conventions, and Primaries shall, to the extent applicable, b[e] governed by and conducted in accordance with . . . the State Party Plan." *Id.* at 20. The Party Plan currently provides for absentee participation in nominations, but only for active-duty military members. *Id.* at 19. The Committee alleges that the General Counsel for the state Party informed the local committees that "[t]he bottom line is that a state-run primary is the only way the Party can nominate candidates for public office." Compl. ¶ 51.

In 2024, the Committee allegedly attempted to use a party canvass to nominate candidates for a Lynchburg city council election. Compl. ¶ 47. The Complaint does not allege the result of that attempt, nor does it allege that any Defendant prevented the Committee from using its preferred nominating method. See *id.* ¶¶ 47–58. The Committee alleges that Susan Beals, the Commissioner of the Virginia Department of Elections, rejected a party canvass that a different and distinct local branch of the Republican Party, the 31st House District Republican Committee (31st HDRC), had proposed. *Id.* ¶ 54; see also Ex. C to Declaration of Thomas J. Sanford, Email

from Susan Beals to Timothy Johnson (March 17, 2025) (hereinafter Beals Email). As Commissioner Beals explained, the proposal submitted by the 31st HDRC "made it facially impossible for the covered voters of § 24.2-509(A) to participate in the complete nomination process" because it provided "less than 7 full business days . . . for participation." *Ibid.* The requested method of nomination thus "ha[d] the practical effect of excluding their participation" and was "rejected." *Ibid*.

On April 8, 2025, the Committee filed this complaint against the Virginia Department of Elections, the State Board of Elections, and Commissioner Beals (collectively, the "Department of Elections"). The Complaint alleges that the amendments to Code § 24.2-509(A) "bar[] political parties from holding nomination methods such as conventions, mass meetings and party canvasses, that can be limited to members of the party only, and instead requir[es] the parties to hold 'open primaries' required by state law to be open to 'raiding' by members of opposing political parties." Compl. ¶ 13. The Committee thus alleges that Code § 24.2-509(A) deprives it of its constitutional rights to free speech and free association under the First Amendment of the Federal Constitution and Article I, § 12 of the Virginia Constitution. Compl. ¶¶ 103–42. These challenges appear to be both facial and as-applied. See *id.* at 27 (alleging that Code § 24.2-509(A) is "unconstitutional, without force, and may not constitutionally be applied anywhere in Virginia to any political party"); *id.* ¶ 13 (seeking declaratory relief that Defendants' "actions to enforce § 24.2-509(A) against Plaintiffs" are unconstitutional). The Committee requests declaratory and injunctive relief, a writ of mandamus, and attorney's fees. *Id.* at 26–27.

## LEGAL STANDARD

"A defendant may challenge subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1) both by "contend[ing] that a complaint simply fails to allege facts upon which

subject matter jurisdiction can be based," and by "contend[ing] that the jurisdictional allegations of the complaint [a]re not true." *Alcorn*, 820 F.3d at 629 (cleaned up). "It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). "A court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008).

A defendant may also move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. And the plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief,'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted).

## ARGUMENT

### I.   The Committee fails to establish subject-matter jurisdiction

#### A.   The Committee lacks standing

First, the Complaint should be dismissed because the Committee has failed to demonstrate Article III standing. The Committee contends that it is injured by being forced to use an "open" state-run primary. But the challenged statute allows the Committee to use other nominating

methods, and to "close" them to non-members. To the extent the Complaint alleges any injury at all, it is not traceable to the challenged statute, but to voluntary choices of the state Party.

The "irreducible constitutional minimum" of Article III standing, which limits the federal judicial power to "Cases" and "Controversies," requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 899 (4th Cir. 2022); U.S. Const. art. III, § 2. These requirements ensure that "[f]ederal courts do not adjudicate hypothetical or abstract disputes," and are not asked to "exercise general legal oversight of the Legislative and Executive Branches." *John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 628–29 (4th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)).

*First*, the Committee lacks standing because it has not adequately alleged facts showing that it suffered an actual or imminent injury. The Complaint's alleged injury is that the Committee will be "bound" by Code § 24.2-509(A) "to certify that the Committee will select a primary as its method of nomination for City Council races in 2026." Compl. ¶ 46. But the Complaint fails to allege facts sufficient to establish that any such injury is "actual or imminent, not conjectural or hypothetical." *Maryland Elec. Integrity, LLC v. Maryland State Bd. of Elecs.*, 127 F.4th 534, 538 (4th Cir. 2025) (quoting Lujan *v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Allegations of future injury from government action must demonstrate that the injury is "certainly impending," and does not rely on a "highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).

The Complaint lacks factual allegations regarding any forthcoming request to use a non-primary nominating method during the "City Council races in 2026" or other future elections.

Compl. ¶ 46. The Complaint does not allege what nominating method the Committee plans to use in the future or whether this method would comply with Code § 24.2-509(A)'s absentee voter protections. See generally *ibid.* Again, the statute permits the Committee to use a canvas, convention, or other "closed" nomination method so long as it allows for absentee participation by the covered party members who are unable to attend in-person. See Factual Background, *supra*. The Complaint alleges no facts showing that providing for such absentee participation would be infeasible. To the contrary, it alleges that "the Committee has offered processes whereby Republican voters could participate in its proposed 2024 party canvass by absentee means." Compl. ¶ 112. Indeed, the Party Plan already provides for such absentee participation by one of the groups enumerated in the statute, active-duty military. Party Plan, Ex. A at 20. And as the Complaint itself states, the process for "military members to vote absentee . . . could be expanded to other absentee voters." Compl. ¶ 120. Any future injury is thus speculative because the facts alleged do not show that the Department of Elections would reject any future requests by the Committee to use a nominating method other than a state-run primary. *Clapper*, 568 U.S. at 410; see also *O'Shea v. Littleton*, 414 U.S. 488, 493–94 (1974) (explaining that a plaintiff must be "immediately in danger of sustaining some direct injury" and "[a]bstract injury is not enough").

The Complaint's allegations that Commissioner Beals rejected a proposal by a different local committee, the 31st HDRC, to use a party canvass do not show a non-speculative injury here. Compl. ¶ 54. Commissioner Beals rejected the 31st HDRC's proposal not because the statute prohibits all canvasses, but because the specific canvass proposed did not have absentee provisions that would allow "the covered voters of § 24.2-509(A) to participate." Beals Email, Ex. C at 1.[1] If

---

[1] Because Commissioner Beals's email is "integral to and explicitly relied on in the complaint," the Court can consider it in evaluating a motion to dismiss. *American Chiropractic v.*

the Committee were to propose a canvass or other nominating method that complies with the statute (and other applicable law), then the Department of Elections would approve it. Because the Complaint lacks any specific factual allegations about the Committee's intended future proposal, it fails to show any injury. See *Fitzgerald v. Alcorn*, 285 F. Supp. 3d 922, 947 (W.D. Va. 2018) (holding that a party lacks standing when it does "not identif[y] a single" enforcement action or threat of enforcement action and instead relie[s] on "hypothetical events [that] are not presented in this case").

The Committee's allegation that it will be injured because donors will spend money on a primary campaign rather than the general election is even more speculative. Compl. ¶ 102.[2] This alleged injury impermissibly relies on "the independent action of some third part[ies] not before the court," the donors. *Lujan*, 504 U.S. at 560. In any event, the alleged injury also turns on the contention that the Committee will be compelled to hold a primary, which the facts alleged fail to demonstrate.

*Second*, the Committee fails to allege facts showing that any injury is traceable to the challenged statute. Again, the alleged injury is the supposed requirement that the Committee use an "open" primary, but Code § 24.2-509(A) does not impose any such requirement. The statute

---

*Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (internal citation omitted); Compl. ¶¶ 53–54 (purporting to attach Beals's email as an exhibit). Even if that were not the case, the Court could still consider the email because in weighing "a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)," like here, "a court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Edley-Worford v. Virginia Conf. of United Methodist Church*, 430 F. Supp. 3d 132, 133–34 (E.D. Va. 2019) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

[2] This paragraph, and other allegations in the complaint, reference a "Bratton Declaration." *E.g.*, Compl. ¶ 10. No such declaration has been filed in this action. See ECF No. 1 (noting filing of the complaint and civil cover sheet only).

allows the Committee to choose other nominating methods, and to "close" them to non-party members, so long as it provides for absentee participation by the covered voters. See Factual Background, *supra*. To the extent the Complaint alleges any injury at all, it appears to be caused by voluntary decisions of the state Party. The Complaint alleges that the Committee plans to use "the party-managed nomination methods available to it under the" Republican Party of Virginia's "Party Plan." *Id.* ¶ 128; see Party Plan, Ex. A at 19–20 (providing that "[a]ll Mass Meetings, Party Canvasses, Conventions, and Primaries shall, to the extent applicable, b[e] governed by and conducted in accordance with . . . the State Party Plan").[3] The current version of the Party Plan provides for absentee participation in nominations by active-duty military but does not appear to provide for absentee participation by the other covered voters, such as students or voters with disabilities. See Party Plan, Ex. A at 19–20; see generally *id.* The Complaint alleges that the General Counsel for the state Party informed the local committees that "[t]he bottom line is that a state-run primary is the only way the Party can nominate candidates for public office." Compl. ¶ 51.

The alleged injury—the requirement to use a primary—is therefore "caused by a voluntary choice made by the Virginia Republican Party," not by Code § 24.2-509(A). *Marshall*, 105 F.3d at 906. And "where the alleged injury is caused by the Party's voluntary choice, the [Committee] does not establish causation." *Alcorn*, 820 F.3d at 632. Rather, where "the Party has made a voluntary choice to limit the Committee's authority in this way, the plaintiffs have 'no complaint

---

[3] Because the Party Plan is "integral to and explicitly relied on in the complaint," the Court can consider it in resolving the motion to dismiss. *American Chiropractic*, 367 F.3d at 234 (internal citation omitted); see, *e.g.*, Compl. ¶ 1 (purporting to attach the Party Plan as an exhibit). Regardless, the Party Plan would properly be before the Court on Defendants' motion under Rule 12(b)(1). See, *e.g.*, *Edley*, 430 F. Supp. 3d at 133–34.

that the party's right to govern itself has been substantially burdened by' the Act because 'the source of the complaint is the party's own decision.'" *Id.* at 633 (quoting *Marshall*, 105 F.3d at 906). "The Virginia Republican Party has made its choice" on which nominating methods it will allow local committees to use under its rules and "there is no reason for [the Court] to interfere with that voluntary decision." *Id.* at 906.

Finally, to the extent the Committee contends that it was injured by being unable to use its preferred nominating method for the 2024 elections, the Committee fails to establish standing for multiple reasons. See Compl. ¶¶ 47–58. The Complaint does not allege that any *defendant* prohibited the Committee from using a party canvass in 2024. See generally *ibid.* Rather, it appears to allege that the Committee voluntarily abandoned its attempt to hold a party canvass after the state Party instructed it to use a primary. *Id.* ¶¶ 51–52. Again, any alleged injury "caused by the Party's voluntary choice . . . does not establish causation." *Alcorn*, 820 F.3d at 632. And in any event, any injury resulting from past elections is not redressable. See *Miller v. Brown*, 462 F.3d 312, 319–20 n.6 (4th Cir. 2006) ("[I]f we waited until after the election to decide this case, redressing the plaintiffs' injuries would be impossible.") (citing *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 301 n.12 (1979)) (hereinafter "*Miller I*"). The Complaint should be dismissed for lack of standing.

### B.    The Committee's claims are not ripe for review

The Committee's conjectural theory of injury also renders this case unripe for review. Ripeness doctrine prevents judicial review until "a controversy [is] presented in a clean-cut and concrete form." *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (quotation omitted). Ripeness balances the "fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." *Ibid.* (cleaned up). Issues are fit for review "when the

11

action is final and not dependent on future uncertainties or intervening agency rulings." *Ibid.* (quotation omitted). "The hardship prong . . . is measured by the immediacy of the threat and the burden imposed on the [plaintiffs] who would be compelled to act under threat of enforcement of the challenged law." *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 759 (4th Cir. 2013) (citation omitted).

The Committee's claims are not ripe for two reasons. *First*, the claims depend on numerous "future uncertainties"—namely, the content of any forthcoming application to use a non-primary nominating method and the Department of Elections' decisions on that application. See Part I.A, *supra*. As noted above, the Committee does not allege any details regarding the non-primary nominating method it intends to request to use in 2026. See Va. Code § 24.2-516 (requiring notification of whether party elects to use a primary "not more than 125 days and not less than 105 days before the date set for the primaries"). Nor does the Committee explain why that method would be unable to comply with § 24.2-509(A). See Part I.A, *supra*. Its constitutional challenge to the hypothetical adjudication of an unspecified hypothetical future request is unripe, as is its request for mandamus relief compelling the Defendants to accept any hypothetical nomination method that the Committee might propose. *Doe*, 713 F.3d at 758–59; *South Carolina*, 912 F.3d 720, 730; see Compl. p. 28 (requesting a writ of mandamus "ordering Defendants to accept . . . whichever nomination method" the Committee selects "in the future").

*Second*, the Complaint offers no basis to conclude that withholding judicial review will cause any undue hardship to the Committee. The Complaint does not allege that the Committee faces any imminent deadlines for the 2026 nominating process. See generally Compl. And the issue may never arise at all, for instance if the Committee devises a non-primary nomination process that complies with the statute by 2026. See generally *ibid.*; see also *id.* at ¶ 112 (suggesting

that the Committee could devise a compliant non-primary method). The Complaint is unripe because no "controversy" is "presented in a 'clean-cut and concrete form.'" *South Carolina*, 912 F.3d at 730 (quoting *Miller I*, 462 F.3d at 319).

### C.    Sovereign immunity bars most of the claims

Most of the claims should also be dismissed for the independent reason that they are barred by the Commonwealth's sovereign immunity. Sovereign immunity bars all of the claims against the Virginia Department of Elections and the State Board of Elections, as well as all of the state-law claims against all defendants. The Court should therefore dismiss those claims.

*First*, the Virginia Department of Elections and the State Board of Elections are entitled to sovereign immunity on all claims. Sovereign immunity "pose[s] a bar to federal jurisdiction over suits against nonconsenting States." *Alden v. Maine*, 527 U.S. 706, 730 (1999). Because the States necessarily act through their agents, the States' sovereign immunity extends to their "agents and [ ] instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Thus, sovereign immunity applies to entities that operate as "arms of the state." *Hutto v. South Carolina Ret. Sys.*, 773 F.3d 536, 541 (4th Cir. 2014).

The State Board of Elections "functions as a quintessential 'arm of the State' with respect to approving candidates for official ballots and making other official election-related decisions." *Libertarian Party of Va. v. Virginia State Bd. of Elecs.*, 2010 WL 3732012, at *5 (E.D. Va. Sept. 16, 2020), aff'd 424 Fed. Appx. 174 (4th Cir. 2011); accord *Goldman v. Northam*, 566 F. Supp. 3d 490, 502 (E.D. Va. 2021), vacated as moot by *Goldman v. Brink*, 41 F.4th 366 (4th Cir. 2022); *Lowe v. Brink*, 615 F. Supp. 3d 417, 426 (E.D. Va. 2022). "A suit against the State Board of Elections is therefore functionally equivalent to a suit against the Commonwealth of Virginia, and the State Board of Elections is entitled to the same protections of sovereign immunity as the

Commonwealth itself." *Libertarian Party*, 2010 WL 3732012, at \*5. The Virginia Department of Elections is similarly an arm of the State. It is headed by a Commissioner appointed by the Governor, and "carr[ies] out the duties required by law and imposed by the" State Board of Elections. Va. Code § 24.2-102(B); see also *id.* § 24.2-103 (laying out the powers and duties of the State Board of Elections and Department of Elections). Therefore, the Department of Elections, an executive branch department that executes the rules and policies of the Board of Elections, is an arm of the State for the same reasons that the Board is.

"[S]tate sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it." *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019). The Complaint asserts claims under the Declaratory Judgment Act, 42 U.S.C. § 1983, Article I, § 12 of the Virginia Constitution, and the All Writs Act. Compl. at 1, 3, 25–28. Neither the Declaratory Judgment Act nor 42 U.S.C. § 1983 abrogate a State's sovereign immunity. *Booth v. State of Md.*, 112 F.3d 139, 146 (4th Cir. 1997) (Declaratory Judgment Act); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (42 U.S.C. § 1983); see *In re Sec'y of the Dep't of Crime Control & Pub. Safety*, 7 F.3d 1140, 1149 (4th Cir. 1993). Nor does the All Writs Act abrogate a State's sovereign immunity. *Reading v. United States*, 506 F. Supp. 2d 13, 20 (D.D.C. 2007); see also *Jordan v. Defense Fin. and Acct. Servs.*, 744 Fed. Appx. 692, 696 (11th Cir. 2018) (explaining that the All Writs Act "does not create subject matter jurisdiction" over claims barred by sovereign immunity).[4]

---

[4] The All Writs Act is also facially inapplicable because it authorizes courts only to issue "writs necessary or appropriate in aid of . . . jurisdiction[ ]," 28 U.S.C. § 1651(a), *i.e.*, "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained," *In re Am. Honda Motor Co., Inc., Dealerships Rels. Litig.*, 315 F.3d 417, 437 (4th Cir. 2003) (cleaned up). Here, no writ is necessary to preserve the Court's jurisdiction or to effectuate its orders, nor does the

Nor has the Commonwealth waived its immunity. The "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (quotation marks omitted). "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Although the Complaint contends that Article I, § 12 of the Virginia Constitution is "self-executing," Compl. ¶ 137, "in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*." *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) (quotation marks omitted). "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [a court] will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). "Nowhere in the Virginia Constitution does Virginia consent to suit in federal court." *Goldman*, 566 F. Supp. 3d at 508. The Commonwealth has therefore not waived its sovereign immunity here. "Because a waiver of sovereign immunity must be clear and unambiguous, and there is no indication in . . . the Virginia Constitution . . . that the Commonwealth intended to waive its immunity from suit in federal court on the issues raised by plaintiffs," all of the claims against the Department of Elections and State Board of Elections are barred. *Parkridge 6 LLC v. United States Dep't of Transp.*, 2010 WL 1404421, at *5 (E.D. Va. Apr. 6, 2010).

---

Committee allege otherwise. To the contrary, the Committee requests a writ of mandamus as substantive relief. Compl. p. 28 (requesting "a writ of mandamus ordering Defendants to accept the decision of the Plaintiff Committee" as to its preferred nominating method). The Committee's All Writs Act claim thus doubly fails.

Further, the narrow *Ex parte Young*, 209 U.S. 123 (1908), exception to sovereign immunity does not apply to the claims against the Department of Elections or State Board of Elections. *Ex parte Young* permits a federal court, in limited circumstances, "to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *Bland v. Roberts*, 730 F.3d 368, 390–91 (4th Cir. 2013). But *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); see also *Libertarian Party*, 2010 WL 3732012, at \*5 ("[T]he legal fiction of the *Ex parte Young* doctrine only allows suit for injunctive or declaratory relief against individual officers or officials of a state or local government, not against a state or state agencies."). All claims against the Department of Elections and State Board of Elections should therefore be dismissed.

*Second*, sovereign immunity also bars all of the Committee's claims under state law, including the claims against Commissioner Beals. Sovereign immunity shields officials sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). And *Ex parte Young* does not apply where the plaintiffs seek a federal court order instructing "state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. In such a case, "the entire basis for the doctrine of" *Ex parte Young* "disappears," because a "federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Ibid.* A State's "sovereign dignity reserves to its own institutions the task of keeping its officers in line with [state] law." *Bragg v. West Va. Coal Ass'n*, 248 F.3d 275, 297 (4th Cir. 2001). Plaintiffs' claims under Article I, § 12 of the Virginia Constitution should therefore be dismissed, including as to Commissioner Beals. As the Committee appears to request All Writs

16

Act relief to compel compliance with the Virginia Constitution and the Code of Virginia, see Compl. p. 28, sovereign immunity bars that relief as well. *Bragg*, 248 F.3d at 293 ("[S]overeign immunity also bars a court's grant of any type of relief, whether retrospective or prospective, based upon a State official's violation of State law."); *Reading*, 506 F. Supp. 2d at 20; see *Jordan*, 744 Fed. Appx. at 696.

## II.    The Committee fails to state claims upon which relief can be granted

The Complaint also fails to state a claim on the merits. The Committee claims that Code § 24.2-509(A) violates its First Amendment rights to free speech and free association by forcing it to nominate candidates through a state-run primary open to non-Republican voters. Compl. ¶¶ 103–130.[5] But the statute does no such thing. The Committee's claims contradict the plain text of the statute, which this Court must "presume[ to be] constitutional." *Faircloth v. Finesod*, 938 F.2d 513, 516 (4th Cir. 1991). Code § 24.2-509(A) permits the Committee to select its preferred nominating method and to limit participation to members of the Republican party; it requires only that the Committee allow certain voters "who are otherwise eligible to participate in the nominating process under [the Republican] party's rules" but who cannot participate in-person, such as active-duty military, the disabled, and college students, to participate absentee. Va. Code § 24.2-509(A); see Factual Background, *supra*.

This requirement falls well within the Commonwealth's broad authority to regulate its own elections. See *Burdick*, 504 U.S. at 433. "Common sense, as well as constitutional law" require

---

[5] The Committee brings free-speech claims under both the federal and Virginia Constitutions. Compl. ¶¶ 103–42. There is no need for the Court to consider the merits of the state law claim, as it is plainly barred by sovereign immunity. See Part I.C, *supra*. The state law claim also fails on the merits, however, for the same reasons as the federal claim. See *Elliot v. Commonwealth*, 267 Va. 464, 472–74 (2004) ("Article I, § 12 of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment."); Compl. ¶ 134 (citing *Elliot* for the same proposition).

"that government must play an active role in structuring elections" to ensure that they are "fair and honest." *Ibid.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Among other requirements, "states may dictate the method by which political parties select their nominees." *Miller II*, 503 F.3d at 368 (citing *American Party of Tex. v. White*, 415 U.S. 767, 781 (1974)). "[T]he Supreme Court has articulated a 'flexible standard' to address 'a [First Amendment] challenge to a state election law,'" known as the *Anderson-Burdick* test. *Fusaro v. Cogan*, 930 F.3d 241, 257 (4th Cir. 2019) (quoting *Burdick*, 504 U.S. at 434). Under that test, "[w]hen facing any constitutional challenge to a state's election laws, a court must first determine whether protected rights are severely burdened," because "[i]f so, strict scrutiny applies." *Id.* at 257–58. (quotation marks omitted). Any "reasonable, nondiscriminatory restrictions upon the First . . . Amendment rights" of voters are generally not severe and are therefore not subject to strict scrutiny. *Burdick*, 504 U.S. at 434. Where the burdens are not severe, "the court must balance the character and magnitude of the burdens imposed against the extent to which the regulations advance the state's interests in ensuring that 'order, rather than chaos, is to accompany the democratic processes.'" *Fusaro*, 930 F.3d at 25 (quotation marks omitted). This balancing test is considerably more flexible than strict scrutiny, which would improperly "tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Ibid.* (quoting *Burdick*, 504 U.S. at 433).

Strict scrutiny does not apply here because Code § 24.2-509(A) does not severely burden protected rights. Rather, the statute is a "reasonable, nondiscriminatory" regulation that serves the Commonwealth's "fundamental" interest in ensuring that active-duty military, people with disabilities, students, and others who are unable to attend in person are afforded an opportunity to participate in their own party's nominating process. *Reynolds v. Sims,* 377 U.S. 533, 561–62 (1964). The statute requires political parties to permit their own qualified members to participate

absentee in a party nomination process if they are unable to attend in-person for the enumerated reasons. See Va. Code § 24.2-509(A). The requirement is not discriminatory; it applies to the "duly constituted authorities" of *any* "political party" that seeks to nominate a candidate for a general election. *Ibid.*

The requirement is also reasonable. It does not compel any party to allow non-members to participate in its nominating process; the absentee provision *only* covers "qualified voters who are otherwise eligible to participate in the nominating process under that political party's rules." Va. Code § 24.2-509(A). Thus, a political party is free to use a "closed" nominating process, "limited to members of the party only," if it wishes to avoid the risk of "'raiding' by members of opposing political parties." Compl. ¶ 13. The statute also does not prohibit the use of "conventions, mass meeting and party canvasses," *ibid.*, or any other "method of nomination" that the party chooses. Va. Code § 24.2-509(A). It simply requires that the chosen method not have the "practical effect of excluding [the] participation" of otherwise qualified voters who are unable to attend in person for one of the enumerated reasons. *Ibid.* While the Complaint alleges that nomination methods other than primaries "traditionally require[d] in-person attendance to vote," Compl. ¶ 37, it alleges no reason why they cannot be designed to allow absentee participation by the covered voters. To the contrary, the Complaint alleges that the Republican Party of Virginia "has already provided procedures where military members can participate in conventions by absentee processes," Compl. ¶ 112, and that these procedures "could be expanded to other absentee voters," Compl. ¶ 120.

The Committee's argument that the statute is a "convention ban" that forces it to hold an open primary thus fails as a matter of law. Compl. ¶ 38. The statute neither prohibits conventions nor requires open primaries. See Va. Code § 24.2-509(A). The Committee's repeated conclusory allegation that the statute "makes it all but impossible for [the parties] to do anything" other than

hold an open primary is insufficient to state a claim, *id.* ¶ 44, as a complaint must offer "more than labels and conclusions" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

The Committee likewise errs in contending that the Attorney General has interpreted the statute to prohibit any "party-managed nomination process, even where such accommodations" for absentee voting "are provided." Compl. ¶ 112. Quite to the contrary, the Attorney General's opinion explains that the statute "does not contain a *per se* prohibition against any particular method of nominating candidates."[6] AG Op., Ex. B at 4. And it explains that determining whether any "specific method" is lawful requires "a review of the attendant factual circumstances." *Ibid.*; *id.* at 4 n.28. Nor did Commissioner Beals's email to a different local party unit indicate that *any* non-primary method would be rejected. See Compl. ¶ 54. The Commissioner's email is clear that one specific proposed nominating method was rejected because it "made it facially impossible for the covered voters of § 24.2-509(A) to participate" and thus "ha[d] the practical effect of excluding their participation." Beals Email, Ex. C at 1.

The Committee's allegation that the Republican Party of Virginia instructed it that it "ha[s] no option but to adopt a state-run, open primary" also does not show that *the statute* imposes such a requirement. Compl. ¶ 55. At most, that allegation shows that the current Republican state Party Plan prevents the use of methods other than a primary. See Part I.A, *supra*. But a voluntary decision by the state Republican Party to instruct its local committees to hold primaries is simply not the

---

[6] The Court may consider the Attorney General's opinion for two reasons. First, State Attorney General opinions are government documents that are subject to judicial notice. *United States v. Lawson*, 677 F.3d 629, 654 (4th Cir. 2012) (taking judicial notice of Attorney General opinion letter); *KVUE, Inc. v. Moore*, 709 F.2d 922, 929 (5th Cir. 1983), aff'd *sub nom. Texas v. KVUE-TV, Inc.*, 465 U.S. 1092 (1984) (taking judicial notice of Attorney General opinion); see also Va. Code § 2.2-505 (authorizing the Attorney General to "render official advisory opinions"). Second, the opinion is "integral to and explicitly relied on in the complaint." *American Chiropractic*, 367 F.3d at 234 (internal citation omitted); Compl. ¶¶ 49–50.

same thing as the statute *compelling* open primaries. "Virginia allows political parties to nominate candidates not only by state-run primary but also by other methods controlled and funded by the party." *Miller II*, 503 F.3d at 367. "And, by merely choosing any of these other options, a party is free to limit its candidate selection process to voters who share its political views." *Ibid.* Thus, "the 'forced association' that the Supreme Court has condemned simply is not present here." *Ibid.* (quoting *California Democratic Party v. Jones*, 530 U.S. 567, 581 (2000)).

The statute thus does not impose a severe burden; it imposes only the minor burden of allowing absentee participation by certain otherwise qualified voters who are unable to attend in person for enumerated reasons. Although there is "[n]o bright line" between severe burdens and lesser burdens, this requirement falls comfortably within the lesser-burden category, and it is therefore subject to "less exacting review." *Timmons*, 520 U.S. at 358–59. The Supreme Court has held that burdens significantly more severe were not subject to strict scrutiny. In *Clingman*, the Court upheld a "semiclosed primary" law, which allowed political parties to open their primaries to non-members only if those non-members were independents. 544 U.S. at 584–85. Because "election laws invariably affect—at least to some degree—the individual's right to vote and his right to associate with others for political ends," the Court held that the "minor barriers" the law imposed did not require strict scrutiny. *Id.* at 593 (cleaned up).

And in *Timmons*, the Supreme Court held that a statute which prohibited a candidate from appearing on the ballot for multiple parties was not subject to strict scrutiny. 520 U.S. at 354. Despite the plaintiff's argument that the law burdened its association by preventing it "from developing consensual political alliances" and "broadening" its base, the Court held that the burden was not severe. *Id.* at 360–61. By contrast, severe burdens include laws that require open primaries, *Jones*, 530 U.S. at 586, prevent "the development of any political party lacking the

21

resources to run a statewide campaign," *Timmons*, 520 U.S. at 361 (discussing *Norman v. Reed*, 502 U.S. 279 (1992)), or "prohibit[ ] political parties from endorsing candidates in party primaries," *id*. at 360–61 (discussing *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214 (1989)).

Code § 24.2-509(A) does not impose a severe burden. Indeed, it imposes less of a burden than those *Clingman* and *Timmons* held not to be severe. Unlike in *Timmons*, the statute does not bar a candidate from appearing on the ballot despite that candidate having been duly nominated by a party. 520 U.S. at 354. And unlike in *Clingman*, the statute does not restrict who a party can determine to be a "qualified voter" for its nomination process. 544 U.S. at 584–85. It instead allows the party to choose both the method of nomination and the qualifications for participating in the nominating process. Va. Code § 24.2-509(A). It applies only to: 1) "qualified voters"; 2) "who are otherwise eligible to participate in the nominating process under [a] political party's rules"; and 3) are "unable to attend meetings" for one of five enumerated reasons. Va. Code § 24.2-509(A). It only requires that the party's chosen nominating method not have the "practical effect" of excluding those voters. *Ibid.* Thus, parties may continue to choose "various methods of nomination" in which they can "exclude voters who do not share [their] views." *Miller II*, 503 F.3d 368. Strict scrutiny therefore does not apply.

Because the Committee's rights are not severely burdened, this Court "must balance the character and magnitude of the burdens imposed against the extent to which the regulations advance the state's interests." *Fusaro*, 930 F.3d at 257 (quotation marks omitted). As described above, Code § 24.2-509(A) imposes only a minor burden on First Amendment rights. By contrast, the statute advances a state interest of the highest order. Va. Code § 24.2-509(A)'s protections permit otherwise disadvantaged groups like deployed military and the disabled to participate in the

process of selecting political candidates. States have a strong interest in "enhancing the democratic character of the election process"; indeed, there is "no government interest more compelling." *Lightfoot v. Eu*, 964 F.2d 865, 872–73 (9th Cir. 1992); see also *Democratic Party of U.S. v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 126 (1981) ("The State has a substantial interest in the manner in which its elections are conducted.").

Broad participation in the political process is a "fundamental matter in a free and democratic society" that is "preservative of other basic civil and political rights." *Reynolds*, 377 U.S. at 561–62. The Commonwealth "has thus met its burden under the *Anderson-Burdick* balancing test." *Fusaro v. Howard*, 19 F.4th 357, 370 (4th Cir. 2021). And the Committee's facial challenge fails for the additional reason that the Committee has failed to carry its burden of showing that "no set of circumstances exists under which" the statute "would be valid," or that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Greater Baltimore Ctr. For Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 282 (4th Cir. 2013) (quoting *United States v. Stevens*, 559 U.S. 460 (2010)). The statute only requires that the Committee allow for absentee participation by voters that the Committee already considers eligible to participate in the nomination process, and it leaves to the Committee how to devise a nomination process that includes such participation. See Part I.A, *supra*. The statute is constitutional both facially and as applied to the Committee.

Finally, while strict scrutiny does not apply, Code § 24.2-509(A) would satisfy even that demanding standard. Under strict scrutiny, a statute that imposes a "severe burden" on a party's First Amendment rights must be "narrowly tailored and advance a compelling state interest." *Timmons*, 520 U.S. at 358. Again, it is difficult to "imagine" a government interest "more compelling" than a State's interest in "enhancing the democratic character of the election process."

23

*Lightfoot*, 964 F.2d at 872–73. The statute is narrowly tailored to that compelling interest. A statute is narrowly tailored if it imposes the "least restrictive means" of accomplishing its goals. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). Here, there is no less restrictive means of permitting voters who are unable to attend a nomination in person, such as active-duty military and people with disabilities, to participate than requiring the party to design a method that will not "have the practical effect of excluding [their] participation." Va. Code § 24.2-509. The Complaint asserts that a "more narrowly tailored solution" would be to allow conventions and other party-run nominating methods so long as they provide for "absentee voters." Compl. ¶ 120. But that is precisely what the statute does: it does not "ban" conventions or any other method, so long as the party designs them to allow participation by these disadvantaged voters. See Factual Background; Part I.A, *supra*.

Code § 24.2-509(A) serves a compelling government interest and is the least restrictive means of doing so. Although strict scrutiny is not warranted, see Part II, *supra*, Code § 24.2-509(A)'s absentee voter protections would withstand it. The claims fail on the merits.

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint.

Respectfully submitted,

**VIRGINIA DEPARTMENT OF ELECTIONS, STATE BOARD OF ELECTIONS, AND SUSAN BEALS, IN HER OFFICIAL CAPACITY**

By: */s/ Thomas J. Sanford*
Thomas J. Sanford (VSB #95965)
    *Deputy Attorney General*

Jason S. Miyares
    *Attorney General*

Erika L. Maley (VSB #97533)
    *Solicitor General*

Kevin M. Gallagher (VSB #87548)
    *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 692-0551 – Telephone
(804) 371-0200 – Facsimile
EMaley@oag.state.va.us

Michael Dingman (VSB #95762)
    *Deputy Solicitor General*

*Counsel for the Virginia Department of Elections, State Board of Elections, and Susan Beals, in her official capacity*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2025, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send a notification of such filing to all counsel of

record.

/s/ Thomas J. Sanford
Thomas J. Sanford
